UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHERRY TAYLOR o/b/o L.T.                         CIVIL ACTION

VERSUS                                           NUMBER: 15-07169

CAROLYN W. COLVIN, ACTING                        SECTION: "G"(5)
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

### REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying Plaintiff's application for Supplemental Security Income ("SSI") benefits. (Rec. doc. 15, 20).

On August 6, 2013, Sherry Taylor, mother of the Plaintiff-in-interest herein, L.T., filed an application for SSI benefits on behalf of the minor child, alleging disability as of July 1, 2010. (Tr. pp. 139-144). In a "Disability Report-Child" form that appears in the record below, Plaintiff's disabling conditions were identified as ADHD and autism. (Tr. p. 173). Plaintiff's application for SSI benefits was denied at the initial level of the Commissioner's administrative review process on September 24, 2013. (Tr. pp. 104-106). Pursuant to Plaintiff's request, a hearing *de novo* before an Administrative Law Judge ("ALJ") went forward on May 30, 2014 at which Plaintiff, Ms. Taylor, and Cynthia Deviney, Plaintiff's therapist/counselor, appeared and testified.[1/] (Tr. pp. 107-109, 110-112, 32-95). On July 22, 2014, the ALJ issued a written decision in which he concluded that Plaintiff was not

---

[1/] Ms. Taylor and Plaintiff voluntarily participated in the hearing without the benefit of counsel or other representation. (Tr. pp. 34-35, 138).

disabled within the meaning of the Social Security Act. (Tr. pp. 12-31). The Appeals Council ("AC") subsequently denied Plaintiff's request for review of the ALJ's decision on October 26, 2015, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 5-8). It is from that unfavorable decision that the Plaintiff seeks judicial review pursuant to 42 U.S.C. §§405(g) and 1383(c)(3).

In her cross-motion for summary judgment, Plaintiff generally argues that the decision of the ALJ is not supported by substantial evidence. (Rec. doc. 15-3, p. 6). Relevant to the resolution of that issue are the following findings that were made by the ALJ:

1. The claimant was born on May 11, 2007. Therefore, he was a school-age child on July 27, 2013, the date [the] application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since July 27, 2013, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Attention Deficit Hyperactivity Disorder (ADHD) and pervasive development disorder (20 CFR 416.924(c)); *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. The claimant has not been disabled, as defined in the Social Security Act, since July 27, 2013, the date the application was filed (20 CFR 416.924(a)).

(Tr. pp. 18, 27).

Judicial review of the Commissioner's decision to deny SSI benefits is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues *de novo*, nor may it substitute its judgment for that of the Commissioner. *Cook v. Heckler*, 750 F.2d 590, 592 (5th Cir. 1983). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant, whether a child or an adult, bears the burden of proving that he is disabled within the meaning of the Social Security Act. *Fraga*, 810 F.2d at 1301; 20 C.F.R. §416.912(a). In making a disability determination on a child, the Commissioner uses the three-step sequential analysis set forth in 20 C.F.R. §416.924, as follows:

1. Determine whether the child engaged in substantial gainful activity during the relevant time frame and, if not;

2. Determine whether the child has a medically determinable severe impairment and, if so;

    3.      Determine whether the impairment meets, medically equals, or is functionally equal to an impairment set forth in the Listing of Impairments, Appendix 1, Subpart P, Part 404.

> *See Verrett v. Commissioner of*
> *Social Security*, No. 99-CV-3647
> 2001 WL 179922 at *1 n. 7
> (E.D. La. Feb. 20, 2001)

In determining whether a child's impairment is functionally equivalent to one of those set forth in the Listing of Impairments, the Commissioner considers the child's limitations in the following six domains: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being. 20 C.F.R. §416.926a(b)(1). To be functionally equal to a listing and thus of listing-level severity, the child must have "marked" limitations in two of the six domains or an "extreme" limitation in one domain. 20 C.F.R. §416.926a(a). In evaluating a child's ability to function in each domain, the Commissioner is to consider: 1) the activities the child is able to perform; 2) the activities the child is not able to perform; 3) which of the child's activities are limited or restricted compared to children of the same age who do not have impairments; 4) whether the child has difficulty with activities at home, in childcare, at school, or in the community; 5) whether the child has difficulty independently initiating, sustaining, or completing activities; and 6) what kind of help the child needs to do activities, how much, and how often. 20 C.F.R. §416.926a(b)(2); *Maps ex rel. M.J. v. Astrue*, 09-CV-2226, 2010 WL 1946662 at *8 (N.D. Tex Apr. 30, 2010), *adopted*, 2010 WL 1948363 (N.D. Tex. May 13, 2010).

As noted earlier, Plaintiff challenges the Commissioner's decision to deny her son SSI benefits on one broad ground, that "[t]he opinion of the Administrative Law Judge is not

supported by substantial evidence." (Rec. doc. 15-3, p. 6). Under the heading of that broad challenge, Plaintiff argues that the ALJ erred in failing to find that L.T. was markedly limited in the functional domains of acquiring and using information, attending and completing tasks, and interacting and relating with others as evidenced by substandard test scores and his day-to-day functioning. (*Id.*). Plaintiff first cites at some length the testimony that Ms. Taylor gave at the administrative hearing regarding L.T.'s aggressive tendencies at home and at school and the medication, therapy, and counseling that he receives to address his level of functioning. (*Id.* at pp. 6-7). Next, Plaintiff points to the results of various tests that were performed as part of a comprehensive psychological evaluation that was conducted at Children's Hospital on August 27, 2012, as a result of which L.T. was found to be eligible for special education services. (*Id.* at pp. 7-8). Although the ALJ noted in his written decision that an Individualized Educational Plan ("IEP") affirmed the results of various standardized assessments indicating clinical significance for certain ADHD symptoms, Plaintiff argues that the ALJ failed to consider how the August 27, 2012 test results affected L.T.'s functioning in each applicable domain. (*Id.* at pp. 8-9). Indeed, Plaintiff observes that the test scores in question were not mentioned anywhere in the Disability Determination Explanation of the state agency medical consultants who reviewed Plaintiff's file at the initial level of the Commissioner's administrative review process or in the ALJ's written decision. (Tr. pp. 96-102, 12-13).

For her part, the Commissioner charges Plaintiff with ignoring almost all of the evidence cited by the ALJ, instead focusing on hearing testimony and the clinical test results of August 27, 2012. (Rec. doc. 20-1, p. 5). With respect to the administrative hearing testimony, the Commissioner points to various Fifth Circuit cases that stand for the rather

5

unremarkable proposition that subjective evidence need not take precedence over objective evidence. (*Id.*). Relatedly, the Commissioner argues that some of the test results cited by Plaintiff were based upon subjective reports from, rather than direct observations of, L.T. and that in the latter circumstance, the testing individual found no significant delays in developmental functioning. (*Id.* at pp. 5-6). The Commissioner further argues that the ALJ made his decision based upon the totality of the evidence and not just the evidence that Plaintiff believes was favorable to his case. (*Id.* at p. 6). Finally, while acknowledging the existence of Administration Regulations and policy indicating that ADHD may cause functional limitations in multiple domains, the Commissioner recites the well-established principle that the mere existence of an impairment or its functional limitations is not disabling per se and that the burden remains on Plaintiff to prove that he suffers from marked limitations in two of the six functional domains or an extreme limitation in one. (*Id.*).

As noted above, functional equivalence is determined by assessing the degree of a child's limitations in six domains, with listing-level severity being established if the child has "marked" limitations in two of the six domains or if the child has an "extreme" limitation in one domain. 20 C.F.R. §416.926a(a). In determining whether a child has a "marked" or "extreme" limitation, the Commissioner considers the functional limitations resulting from all of the child's impairments, "including their interactive and cumulative effects." 20 C.F.R. §416.926a(e)(1). Among the medical evidence that the Commissioner may consider in making that determination are the results of ". . . formal testing that provides information about your development or functioning in terms of percentiles, percentages of delay, or age or grade equivalents." 20 C.F.R. §416.926a(e)(1)(ii). A marked limitation exists when an impairment or combination of impairments interferes seriously with the child's ability to

6

independently initiate, sustain, or complete activities.  20 C.F.R. §416.926a(e)(2)(i).  A marked limitation is one that is more than moderate but less than extreme, the equivalent of functioning that would be expected to be found ". . . on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.*  Of particular importance to the matter at hand, the Regulations further provide that:

> If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.  (*See* paragraph (e)(4) of this section.)

20 C.F.R. §416.926a(e)(2)(iii).

The Regulations go on to define an extreme limitation as one that is more than marked, the equivalent of functioning that would expected to be found "… on standardized testing with scores that are at least three standard deviations below the mean."  20 C.F.R. §416.926a(e)(3)(i).  Notably, the Regulations further provide that:

> If you are a child of any age (birth to the attainment of age 18), we will find that you have an "extreme" limitation when you have a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.  (*See* paragraph (e)(4) of this section.)

20 C.F.R §416.926a(e)(3)(iii).

Also informative to the instant matter is language that appears within Social Security Ruling ("SSR") 09-4p, the SSR pertaining to functional equivalence in the domain of attending and completing tasks, which instructs that "[c]hildren with attention-deficit/hyperactivity

7

disorder (AD/HD) whose primary difficulty is inattention may be easily distracted or have difficulty focusing on what is important and staying on task." *Id*. In addition, "[c]hildren with AD/HD whose primary difficulty is hyperactivity and impulsivity may fidget with objects instead of paying attention, talk instead of listening to instructions, or get up from their desks and wander around the classroom beyond what is expected of children their age who do not have impairments." *Id.* at *3 (footnote omitted). Additional language in SSR 09-4p discusses the effect that deficits in the domain of attending and completing tasks may have on limitations in other domains:

> . . . school-age children with AD/HD may have limitations in multiple domains. The effects of inattention and hyperactivity can impede the learning process and affect competence in many areas of life. These effects can result in limitations in the domain of "Acquiring and using information;" for example, by undermining academic performance.

SSR 09-4p, 2009 WL 396033 at *3-4.

This interplay is echoed in SSR 09-3p, the SSR pertaining to functional equivalence in the domain of acquiring and using information, which provides as follows:

> [c]hildren who have limitations in the domain of "acquiring and using information" may also have limitations in other domains. For example, mental impairments that affect a child's ability to learn may also affect a child's ability to attend or to complete tasks. In such cases, we evaluate limitations in both domains of "Acquiring and using information" and "Attending and completing tasks."

As one court has observed, "[g]iven the important role of oral communication in the domains of acquiring and using information and interacting and relating with others, a child with a significant speech impairment may have functional imitations in both domains." *Perez*

8

*v. Astrue*, No. 08-CV-2176, 2009 WL 3076259 at *6 (D. Colo. Sept. 23, 2009).  Finally, as both SSR 09-4p and SSR 09-3p make clear:

> [r]ating the limitations caused by a child's impairment(s) in each and every domain that is affected is not 'double-weighing' of either the impairment(s) or its effects.  Rather, it recognizes the particular effects of the child's impairment(s) in all domains involved in the child's limited activities.
>
> SSR 09-4p, 2009 WL 396033 at *4; SSR 09-3p, 2009 WL 396025 at *4 (footnotes omitted).

In the present matter, the ALJ found that Plaintiff suffered from severe impairments in the form of ADHD and pervasive development disorder.  (Tr. p. 18).  At step three of the §416.924 analysis, the ALJ then determined that the aforementioned impairments did not satisfy the criteria of any of those set forth in the Listing of Impairments, particularly Listings 112.11 and 112.10 relative to ADHD, autistic disorder, and other pervasive development disorders.  (*Id.*).  Continuing on to the functional-equivalence component of step three, the ALJ found that Plaintiff had less than marked limitations in attending and completing tasks and in interacting and relating with others and had no limitations in acquiring and using information, moving about and manipulating objects, caring for himself, or health and physical well-being.  (Tr. pp. 22-27).  However, in discussing the evidence that he considered in making that functional equivalence determination, nowhere did the ALJ mention the results of the Adaptive Behavior Assessment System – Second Edition ("ABAS-II")[2] that was

---

[2] In the ABAS-II, standard scores are based on an average or "mean" of 100 with a standard deviation of 15, meaning that each 15 points below 100 is one standard deviation below the mean; *e.g.*, a score of 85 is one standard deviation below the mean, a score of 70 is two standard deviations below the mean, and so forth.  *See, e.g.*, *Boyington v. Colvin*, 48 F.Supp.2d 527, 531 (W.D. N.Y. 2014)(same scoring scale in Batelle Developmental Inventory II ("BDI-2")).  As courts routinely consider ABAS-II scores in Social Security proceedings like this one, the ABAS-II may properly be considered to be a "comprehensive standardized test designed to measure ability

9

administered as part of a psychological evaluation conducted at Children's Hospital on August 27, 2012. (Tr. pp. 209-220). In the ABAS-II, Plaintiff achieved a General Adaptive Composite score of 54, a Conceptual Composite score of 61, a Social Composite score of 59, and a Practical Composite score of 52, scores that fell in the "Extremely Low" range and that were indicative of "significant delays" in the noted areas. (Tr. p. 215). Those scores, coupled with other findings that were obtained during the psychological evaluation, qualified Plaintiff for special education services. (Tr. pp. 218-220). Although the psychological evaluation report was duly made a part of the record below, the ABAS-II test results were not mentioned by the state-agency medical consultants who reviewed Plaintiff's file at the initial level of the Commissioner's administrative review process or in the ALJ's written decision.

Two of the scores that Plaintiff obtained in the ABAS-II, including the General Adaptive Composite score of 54, were greater than three standard deviations below the mean; the other two scores were greater than two standard deviations below the mean. In a recent case that the Court was able to locate in which ABAS-II testing was conducted, an examining psychologist characterized an overall score of 62 as indicative of "marked" to "extreme" levels of dysfunction. *Bailey v. Colvin*, No. 14-CV-749, 2015 WL 4488153 at *7-8 (D. Ore. July 22, 2015). As directed by §416.926a(e)(3)(iii), if Plaintiff's day-to-day functioning was found to be consistent with his ABAS-II scores of 54 and 52, the Regulations would direct that he had an extreme limitation in one of the six functional domains specified in §416.926a(b)(1). Although the ALJ in the present case dutifully recited the

---

or functioning" within the meaning of the Regulations. *See McClellan v. Astrue*, 804 F.Supp.2d 678, 693 (E.D. Tenn. 2011); *Bailey v. Colvin*, No. 14-CV-749, 2015 WL 4488153 at *7-8 (D. Ore. July 22, 2015); *Camber v. Astrue*, No. 11-CV-599, 2012 WL 5830714 at *1 (N.D. N.Y. Nov. 16, 2012).

10

§416.926a(e)(2)(iii) and (3)(iii) standards in his written opinion (tr. p. 17), his decision does not include any statements regarding the statistical relevancy of the ABAS-II results and whether the results were consistent with Plaintiff's functioning in the relevant domain(s). Indeed, the ABAS-II results were not mentioned at all by the state-agency medical consultants or the ALJ nor were they acknowledged or meaningfully discussed by the Commissioner in her cross-motion for summary judgment. Unfortunately, these omissions prevent the Court from determining whether the Commissioner's decision is supported by substantial evidence. While the test results standing alone may not ultimately carry the day, *Singleton o/b/o M.T.S. v. Astrue*, No. 11-CV-512, 2012 WL 666098 at *4 (M.D. Ala. Feb. 29, 2012), it should be up to the Commissioner in the first instance to properly consider Plaintiff's ABAS-II scores in his functional equivalence analysis and to determine whether Plaintiff's daily functioning in the relevant domain(s) is consistent with those scores. *See M.A.M. v. Barnhart*, No. 05-CV-6295, 2006 WL 2034743 at *2 (E.D. Penn. July 18, 2006).

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that this matter be remanded to the Commissioner for further proceedings consistent with the Court's opinion.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[3/]

New Orleans, Louisiana, this 10th day of October, 2016.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[3/] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.